IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SETH BLACKWELL and<br>BRENNAN SHORT,<br>　　Plaintiffs,<br><br>vs.<br><br><br>LILIS ENERGY, INC.,<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO: _____<br>JURY DEMANDED |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COME Plaintiffs, Seth Blackwell and Brennan Short (collectively referred to herein as "Plaintiffs"), filing this their *Complaint*, complaining of Lilis Energy, Inc., Defendant, and for cause of action would respectfully show the following:

### I. PARTIES

1.1.　Plaintiff, *Seth Blackwell* ("Blackwell"), is an individual residing in Magnolia, Montgomery County, Texas.

1.2.　Plaintiff, *Brennan Short* ("Short"), is an individual residing in Fair Oaks Ranch, Bexar County, Texas.

1.3.　Defendant, *Lilis Energy, Inc.* ("Lilis Energy" or "Defendant"), is a Nevada corporation with its principal place of business in Harris County, Texas. Lilis Energy may be served with summons by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78071.

## II. Venue

2.1.    Venue of this action is proper in this district and division because the events giving rise to the cause of action alleged herein occurred in this division and judicial district, and Lilis Energy has its principal place of business in this division and judicial district.

## III. Jurisdiction

3.1.    This Court has jurisdiction over this case pursuant to the district court's federal question jurisdiction (28 U.S.C. § 1331). Specifically, this case is brought pursuant to the Sarbanes-Oxley Act of 2002, as amended ("SOX").

## IV. Statement of Causes of Action

4.1.    Lilis Energy is a Houston-based, independent, oil and gas exploration and production company that operates in the Permian's Delaware Basin.

4.2.    Lilis Energy hired Blackwell as its Executive Vice President of Land & Business Development ("EVP") in December 2016. Blackwell's performance earned him praise from Lilis Energy executives and members of the board of directors throughout his tenure. Blackwell never received any negative performance evaluations while employed by Lilis Energy, was never written up or reprimanded about poor job performance, and was not subjected to any other forms of progressive discipline.

4.3.    Lilis Energy hired Short as its Chief Operating Officer ("COO") in January 2017. During Short's tenure, he successfully grew Lilis Energy from a single-rig operation to a three-rig operation, played a role in Lilis Energy's relisting on the New York Stock Exchange under the ticker LLEX, and increased Lilis Energy's PV10[1] more than ten-fold from $6.6 million in

---

[1] "PV10" is a term of art that means the present value of estimated future oil and gas revenues net of estimated direct expenses and discounted at an annual discount rate of 10%.

2016 to approximately $68.8 million in 2018. Short never received any negative performance evaluations while employed at Lilis Energy, was never written up or reprimanded about his job performance, and was not subjected to any other forms of progressive discipline.

4.4. On December 11, 2017, an executive meeting was held in Houston, Texas, to discuss, among other things, Lilis Energy's 2018 financial projections and Lilis Energy's 2018 budget. Present at the meeting were Short, Blackwell, Ariella Fuchs (Lilis Energy's then-general counsel) ("Fuchs"), Jim Linville (Lilis Energy's then-CEO) ("Linville"), Joseph Daches (Chief Financial Officer) ("Daches"), and Ronald Ormand (Chairman of the Board and Lilis Energy's current CEO) ("Ormand").

4.5. One of the topics of discussion at the December 11, 2017 meeting concerned Lilis Energy's failure to meet its 2017 SEC guidance numbers. At the time of Lilis Energy's 2017 projections, Lilis Energy lacked actual production data from newly-acquired plays[2] and, instead, estimated its 2017 projected production numbers based on production from offset wells,[3] amongst other things. However, for the upcoming year Lilis Energy had actual production data from the reserves and fields that could be used in its production estimates to more accurately estimate Lilis Energy's financial and production estimates to the SEC and Lilis Energy shareholders. Based on Lilis Energy's 2017 actual production numbers, Short, in coordination with Blackwell, determined Lilis Energy's 2018 production figures and reserve estimates. At the same time, however, Lilis Energy's finance department, led by Daches, made an independent analysis of Lilis Energy's 2018 production figures and reserves (the "Finance Department Estimate") without taking into account the available production data.

---

[2] A "play" is a group of oil fields or prospects in the same region and controlled by the same conditions.
[3] An offset well is a well that is drilled prior to and in preparation for planning a future well for production. Offset wells provide information and data about the resources in the field and assist in deciding where to place future wells to maximize and ensure efficiency in future production.

4.6.    Short and Blackwell quickly realized the Finance Department Estimate did not appear to be supported by production data. In response, Short presented the available well data to validate his and Blackwell's analysis to those present at the December 11, 2017 meeting and expressed his belief the Finance Department Estimate was not accurate and should not be used in financial disclosure documents because it would present an inaccurate representation of Lilis Energy's true financial and production estimates. Following Short's presentation, Blackwell informed those present he concurred with the estimate presented by Short, and expressed his concern the Finance Department Estimate was not accurate and should not be used in financial disclosure documents because it would present an inaccurate representation of Lilis Energy's true financial and production estimates. Specifically, Blackwell stated that the estimates provided by the finance department for 2017 proved to be largely inflated, and in light of the production forecasts by Short, he was confident that they were erroneously high again in 2018.  At this time, Short and Blackwell were aware Ormand had previously been the subject of an Securities Exchange Commission ("SEC") investigation. After Short's presentation and Blackwell's comments, and without discussion, Ormand stated the Finance Department Estimate would be used for SEC Production Guidance and the 2018 budget.

4.7.    On January 9, 2018, the Board of Directors ("Board") met and approved the 2018 budget incorporating the Finance Department Estimate. On February 22, 2018, Short submitted a *Management Representation and Sub-Certification Package* ("10K Sub-Certification"). In the 10K Sub-Certification, Short stated, among other things, that he reasonably believed the decision not to use all available production data was material to Lilis Energy's results of operations and would be of importance to shareholders. Short also indicated his belief that the Finance Department Estimate could impact Lilis Energy's disclosure of forward looking information.

4.8. Likewise, on approximately February 22, 2018, Blackwell submitted a *Management Representation and Sub-Certification Package* ("10K Sub-Certification"). In the 10K Sub-Certification, Blackwell stated, among other things, that "operations"—*i.e.*, the individuals responsible for operations within Lilis Energy—were not in agreement with the production forecast under the press release for production guidance. Blackwell indicated this information was a significant change to the Lilis Energy's business plan/forecast, was information outside the ordinary course of business that would be material to Lilis Energy's holders of Lilis Energy's equity or debt securities, and that the Finance Department Estimate could impact Lilis Energy's disclosure of forward looking information.

4.9. The next day, Ormand called a meeting with Blackwell to discuss his 10K Sub-Certification. Before the meeting, Ormand sent Blackwell a text message, accusing him of putting himself before the company. At the meeting, Ormand threatened to terminate Blackwell if he discussed the 10K Sub-Certification with anyone. Ormand also told Blackwell he should not be burning bridges with Lilis Energy because Blackwell would eventually need a reference from Lilis Energy. As a result of Ormand's threats, Blackwell reminded Ormand that he had a right to report certain things to the Board under the whistleblower laws.

4.10. On February 28, 2018, during a conference call with Peter Benz (Lilis Energy Audit Committee Chair and Board Member) ("Benz"), Gen. Merill McPeak (Lilis Energy Board Member and former Compensation Committee Chair) ("Gen. McPeak"), Michael Hedge (a lawyer with K&L Gates LLP ("Hedge"), and Blackwell, Short and Blackwell reiterated their concerns regarding the Finance Department Estimate. Moreover, Short and Blackwell expressed their belief that incorporating the Finance Department Estimate in Lilis Energy's press releases

and other publically filed documents, among other things, was potentially fraudulent because it would not accurately present Lilis Energy's 2018 financial and production estimates to shareholders. Benz responded that an internal investigation would be launched and that Blackwell and Short would both be protected under the "Whistleblower Act."

4.11.   The following week, on March 6, 2018, Lilis Energy, Inc. terminated Short via a letter from Ormand. The termination letter did not provide any specifics as to the alleged reason for termination.

4.12.   On April 3, 2018, Lilis Energy terminated Blackwell.

### V.   VIOLATION OF THE SARBANES-OXLEY ACT OF 2002

**A.     Short's Claims**

5.1.    Short incorporates the factual allegations recited above and would show that Lilis Energy's conduct constitutes violations of the SOX in that Lilis Energy terminated Short because he engaged in protected conduct under the SOX. Short's protected conduct was a contributing factor in his termination.

5.2.    Lilis Energy's conduct has caused Short damage by way of loss of wages and benefits in the past and future, and other pecuniary and non-pecuniary (mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life) compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future.

5.3.    Reinstatement is not feasible, though Short seeks it if it is found to be feasible.

**B.      Blackwell's Claims**

5.4.    Blackwell incorporates the factual allegations recited above and would show that Lilis Energy's conduct constitutes violations of the SOXin that Lilis Energy terminated Blackwell because he engaged in protected conduct under the SOX. Blackwell's protected conduct was a contributing factor in his termination.

5.5.    Lilis Energy's conduct has caused Blackwell damage by way of loss of wages and benefits in the past and future, and other pecuniary and non-pecuniary (mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life) compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future.

5.6.    Reinstatement is not feasible, though Blackwell seeks it if it is found to be feasible.

## VI. ATTORNEYS' FEES

6.1.    Lilis Energy's conduct has made it necessary for Short and Blackwell to employ the undersigned attorneys to file this lawsuit. Accordingly, Short and Blackwell seek reasonable attorneys' fees, expert witness fees, and litigation costs for the services rendered and to be rendered through trial and in the event of subsequent appeals to the Court of Appeals, and if necessary, the Supreme Court.

## VII. ADMINISTRATIVE PREREQUISITES

7.1.    Short and Blackwell have satisfied all administrative requirements to bring their claims under SOX. Short and Blackwell timely filed their complaints with the United States Department of Labor—OSHA on or about August 29, 2018, and September 21, 2018, respectively.

7.2. A final decision was not issued by the Secretary of Labor within 180 days of the filing of Short's complaint.

7.3. A final decision was not issued by the Secretary of Labor within 180 days of the filing of Blackwell's complaint.

7.4. Short has timely filed this lawsuit.

7.5. Blackwell has timely filed this lawsuit.

## VIII. JURY DEMAND

8.1. Short and Blackwell demand a jury on all issues to be tried in this matter.

## PRAYER

WHEREFORE, Plaintiffs, Seth Blackwell and Brennan Short, pray that Defendant, Lilis Energy, Inc., be summoned to appear and answer; and that upon final trial Plaintiffs be awarded judgment against Defendant for actual damages, reinstatement if it is not unfeasible, front pay, compensatory damages, expert witness fees, costs of suit, prejudgment interest and post-judgment interest at the highest legal rate, and such other and further relief, whether general or special, legal or equitable, to which they may be justly entitled.

Respectfully submitted,

JACKSON WALKER LLP

**/S/ G. SCOTT FIDDLER**
_____

G. SCOTT FIDDLER
*Attorney-in-Charge*
Texas State Bar No. 06957750
Federal ID No. 12508
sfiddler@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Tel.:    713-752-4217
Fax:    713-754-6717
COURTNEY CARLSON
*Of Counsel*
Texas State Bar No. 24065004
Federal ID No. 1115579
Ccarlson@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Tel.:    713-752-4239
Fax:    713-308-4139

ATTORNEYS FOR PLAINTIFFS