1                    IN THE UNITED STATES DISTRICT COURT

2                    FOR THE SOUTHERN DISTRICT OF TEXAS

3                              HOUSTON DIVISION

4     SETH BLACKWELL,                            4:19-cv-02311
      BRENNAN SHORT,
5               PLAINTIFFS

6
      V.                                         October 21, 2019
7                                                Houston, Texas
                                                 1:06 p.m.
8     LILIS ENERGY, INC.,
                DEFENDANT
9

10

11

12            INITIAL PRETRIAL AND SCHEDULING CONFERENCE

13            BEFORE THE HONORABLE NANCY F. ATLAS

14                    UNITED STATES DISTRICT JUDGE

15    APPEARANCES:

16
      For Plaintiff                    G. Scott Fiddler
17                                     Jackson Walker, LLP
                                       1401 McKinney
18                                     Suite 1900
                                       Houston, Texas 77010
19
      For the Defendant                Ashlee C. Grant
20                                     Dennis P. Duffy
                                       Baker Hostetler, LLP
21                                     811 Main Street
                                       Suite 1100
22                                     Houston, Texas 77002

23    Case Manager                     Shelia Ashabranner

24

25    Proceedings from official electronic sound recording;
      transcript produced by court approved transcriber.

      DIGITAL SCROLL TRANSCRIPTION                    281.382.9862

| | |
|---|---|
| 1 | Electronic Recording Operator |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

Claudia Gutierrez
United States District
  Clerk's Office
515 Rusk
Houston, Texas 77002

```
 1              THE COURT:  Please be seated.
 2                   Good afternoon.
 3                   I have a case Blackwell versus Lilis Energy.
 4                   Would counsel state their appearances?
 5         MR. FIDDLER:  Scott Fiddler for the Plaintiffs,
 6   Seth Blackwell and Brennan Short.
 7         MS. GRANT:  Ashlee Grant and Dennis Duffy for the
 8   Defendant, Lilis Energy.
 9         THE COURT:  Okay.  Do I have a – this is an Initial
10   Pretrial Conference.  Do I have a Joint Case Management Plan
11   from you all?
12         MR. FIDDLER:  Yes, Your Honor.
13         THE COURT:  Okay.  I don't physically have one, and I
14   haven't seen it, if it was submitted, so – I mean, I haven't
15   seen it online.
16                   Do you have a copy?
17         MR. FIDDLER:  Yes, Your Honor.
18                   I don't, but –
19         MS. GRANT:  I can give you – I have one that's –
20   that's been holes punched, if that's is sufficient.
21         THE COURT:  Oh, that's no problem.
22                   Thank you so much.
23                   Okay.  Let's talk about this case.  I am
24   interested in a little bit more background on the employment
25   agreements that are in issue and the breaches that are
```

1  alleged.  You want to comment on the agreement, and –

2          I guess I should let Plaintiff claim go first.

3          Go ahead.

4      MR. FIDDLER:  Yes, sure.

5          So, the employment agreements are the typical

6  executive employment agreements that require cause for

7  termination, and if there's not cause, then there's a payout

8  and stock options vest and things like that.

9      THE COURT:  Uh-huh.

10     MR. FIDDLER:  In this case, Mr. Blackwell and Mr.

11 Short began working for Lilis Energy in approximately

12 January of 2017.  At the end of 2017, they were planning for

13 the 2018 budget.  They met with the – they were parts of the –

14 they were part of the executive leadership team because Mr.

15 Short was the COO, and Mr. Blackwell was the Vice President of

16 Land and Business Development.

17         So, they were in an executive leadership team

18 meeting talking about the 2018 budget, talking about

19 productions, estimates they were going to include in, like, a

20 10K and other – other public disclosures.  And the company

21 wanted to use production estimates that were not based on past

22 production but were based on expectation that was kind of

23 speculative and my clients thought exaggerated.

24         So, they raised a concern about that.  The

25 company went ahead and used the higher numbers anyway.  And

1  then a few months later, on February 22nd, 2017 – oh, I'm

2  sorry – 2018 – they had to do a – what's called a 10K

3  sub-certification, so the executives have to let the company

4  know if they have any concerns about any fraud or

5  misrepresentations or other financial that was provided –

6           THE COURT:  Under Sarbanes-Oxley?

7           MR. FIDDLER:  Yes.

8                And so, what they put in the – in the

9  sub-certification was, hey, we both have concerns about using

10  these numbers which we think are exaggerated.

11                The next day the CEO, Mr. Foreman, met with

12  Mr. Blackwell and told him he was burning bridges and that he

13  should – if he reported anything that he put in the 10K

14  sub-certification anybody outside of the company would be

15  terminated.

16                On February –

17           THE COURT:  The sub-certification isn't filed?

18           MR. FIDDLER:  Is what?

19           THE COURT:  It is not filed publicly?

20           MR. FIDDLER:  I don't believe so.  I believe it is

21  sent to the company; the company uses it to rely upon it to

22  file publicly with the SEC.

23           THE COURT:  Oh, the people above him.

24           MR. FIDDLER:  And then, six days later, on

25  February 28th, there's another meeting with executives, and

1  now they're discussing these – or representation, production

2  numbers again, and they were going to use them in – in some

3  press releases against some other public statements.

4              And so, again, Mr. Blackwell and Mr. Short bring

5  this up, and they express – they protest against it and

6  express their concerns.  And then, within a week, Mr. –

7  Mr. Short is terminated within – about three weeks after that.

8  But four weeks after that, Mr. –

9          THE COURT:  Black- --

10         MR. FIDDLER:  -- Mr. Blackwell is terminated.

11         THE COURT:  Okay.

12             Did – did they have their issues – performance

13  issues that they had been made aware of?

14         MR. FIDDLER:  No, Your Honor.  They had never been

15  reprimanded, counseled, anything like that regarding poor

16  performance.

17         THE COURT:  And how long did each of them work there,

18  if you know?

19         MR. FIDDLER:  They just started in – one had started

20  in December of '16, the other in January of '17, so just

21  about –

22         THE COURT:  A year

23         MR. FIDDLER:   -- a year and four or five months.

24         THE COURT:  Okay.

25             Do you want to comment?

 1          MS. GRANT:  Yes, Your Honor.  There are a couple of

 2  comments.

 3          First, with respect to the issue of the 10K

 4  question and the complaint.  It has taken us – there are some

 5  key facts that are left out, because first off the statements

 6  about the projections of the budget are forward looking

 7  statements.  There's a lot of disclosures on the bottom of

 8  these that these are forward looking.  There's a safe harbor

 9  provision.  And so, arguably, none of those complaints

10  centered or constituted protected activity under Sarbanes-

11  Oxley.

12          Also, at the same time –

13          THE COURT:  Well, I don't about Sarbanes-Oxley,

14  frankly, but I do know about the Federal False Claims Act, and

15  there you don't have to be right; you just have to be – have a

16  reasonable belief.

17          MS. GRANT:  A reasonable belief, correct, but

18  remember, these are not your low-level employees; these are

19  high level, COO, VPs, who are regularly dealing with SEC

20  filings, understand the forward-looking statements, understand

21  the safe harbor provisions.

22          In addition, the statements that he was made, in

23  addition to these projections and the bonuses, there's some

24  issues about an incentive bonus that's under the terms of the

25  contract.  They were also raising complaints about an

1   incentive bonus, claiming they are owed.  What's one of the

2   reasons that we say we had cause, in addition to some other

3   issues, with their performance, specifically failing to

4   disclose belated party transactions, also just several

5   complaints about their performance is these complaints about

6   the incentive bonus.

7              So, the "burning bridges" comments, a lot of the

8   back and forth disagreements centered not on these statements

9   about the bonus and projections but are on the complaints

10  about "I'm owed a bonus" that I haven't been paid.

11             So, that goes to that context, that piece with

12  the back and forth discussions, specifically, yes, Your Honor.

13        THE COURT:  Okay.  Let me look at your – the Schedule

14  you all are providing.

15             You're saying discovery could be done

16  August 15th of 2020.  And the experts April for Plaintiff,

17  April 15th and for Defendant May 15th?

18        MR. FIDDLER:  Defendant wanted until June 15th, and

19  that's fine with us.

20        THE COURT:  That was rebuttal.

21        MR. FIDDLER:  Oh, was it?

22        THE COURT:  Uh-huh.

23        MS. GRANT:  Yes, it is.  April, May and then the 15th

24  of June.

25        MR. FIDDLER:  Oh, okay.  I'm sorry.

1          MS. GRANT:  Yeah.

2          MR. DUFFY:  June 15th, end of June.

3          THE COURT:  That's what it says here.

4           MR. DUFFY:  Yes, that's correct, Your Honor.

5          THE COURT:  Okay.

6               And what about close of discov- -- not close of

7     discovery - amendments to pleadings and adding of third

8     parties?

9               What makes sense to you all, maybe yearend or

10    something?

11              I don't know where you are on paper discovery.

12         MR. FIDDLER:  Yes.  I think yearend or the beginning

13    of January is fine.

14         THE COURT:  Yeah?

15         MR. DUFFY:  Yes, Your Honor.

16         THE COURT:  Okay.

17              Is there a chance of third party, likely?

18         MR. DUFFY:  I don't think so.

19         THE COURT:  I mean, you're not bound, but I'm just

20    asking.

21          MR. FIDDLER:  No, Your Honor.  I don't think so.

22         THE COURT:  Okay.  So, maybe the first week of

23    January?  I'll give you specific dates in a minute.

24              And that Initial Disclosures it says in here

25    October 24th, which is this week.

1            What are you going to do for Initial

2   Disclosures?  What kind of material?

3            The reason I'm asking is it's very important

4   that the materials be turned over, not just listed, and

5   anything that the Plaintiffs have in their possession that

6   support their claims, plus anything in Rule 26 is included.

7            MR. FIDDLER:  And I know people interpret those

8   Disclosures differently sometimes as they get them.

9            THE COURT:  Right.  I believe in very extensive ones.

10           MR. FIDDLER:  Okay.  So, we may need to push that

11  back a week, because I know Ms. Grant and one of the attorneys

12  over at my firm has been working on that, and they're still

13  working on getting those documents ready.

14           MS. GRANT:  And we can push them back a week.

15           There has been discovery in the two related

16  matters.

17           THE COURT:  Yes.

18           MS. GRANT:  So –

19           MR. DUFFY:  Which are parallel to the –

20           THE COURT:  Tell me about that.  I should have asked

21  about those.  You're right.

22           The related matters are in Harris County?

23           MR. DUFFY:  And New York, Your Honor.

24           THE COURT:  And New York.

25           MR. DUFFY:  And they're both –

1          THE COURT:  Plaintiff?

2          MR. DUFFY:  I'm sorry.

3          THE COURT:  I'm sorry.

4              Blackwell – I just want to make sure I've got

5     it.  Blackwell sued Defendant in Texas state court.

6          MR. DUFFY:  That's correct.

7          THE COURT:  And Defendant versus Short in – in

8          MR. FIDDLER:  In New York.

9          MR. DUFFY:  New York.

10         MR. FIDDLER:  Your Honor, the difference –

11         THE COURT:  Yeah.

12             Plaintiff sued in Texas state court it says.

13         MR. FIDDLER:  Yeah.

14         THE COURT:  And then Defendant sued in – Short in New

15    York.

16         MR. FIDDLER:  Right.

17             Their employment agreements are very similar,

18    except that Mr. Short calls for a New York venue –

19         MR. DUFFY:  And –

20         MR. FIDDLER:  -- and law, as well.

21         THE COURT:  Oh.

22         MR. FIDDLER:  I initially filed both lawsuits in

23    Texas.  They then filed counterclaims in New York against both

24    lawsuits in New York alleging, basically, counterclaims.

25             Mr. Blackwell's case in New York was dismissed.

1   Mr. Short's we didn't contest, so there's still Mr. Short's

2   case pending in New York; Mr. Blackwell's in Texas in state

3   court.

4            THE COURT:  How are we going to manage all that?

5            MR. FIDDLER:  I think we'll work it out, frankly.

6            THE COURT:  I mean, I'm not – okay.  It's all good.

7   But I'm not – look, you shouldn't be that hard to manage in

8   terms of the initial stuff, but it makes no sense to me to

9   have state judge and federal judge in two states working on

10  these matters for very long.  So, what –

11           Are you coordinating discovery or – I can't tell

12  when these says June 28th and July and then my case was filed

13  on June 27th.

14       MR. DUFFY:  Certainly that would be the hope, Your

15  Honor, because the underlying facts for both their affirmative

16  case in this court and our affirmative case in the other court

17  essentially had the same –

18           THE COURT:  No, if –

19       MR. DUFFY:  -- bottom line, that is, their own

20  interpretation of the various agreements, whether or not there

21  was cause, whether or not there was a breach of fiduciary duty

22  by any of his clients, which go to both our defense and the

23  contract.

24           So, they're essentially, for lack of a better

25  term, inextricably intertwined.


DIGITAL SCROLL TRANSCRIPTION                    281.382.9862

1          THE COURT:  Right.

2          MR. DUFFY:  So, we would – we would plan to try to

3   coordinate discovery in that regards, so at least for us the

4   proposal would be, here, take a deposition; it is a deposition

5   for –

6          THE COURT:  Only –

7          MR. DUFFY:  -- any other places where it may happen

8   to end.

9          THE COURT:  All right.

10             But I'm – you all need to keep me posted at this

11   activity in the other cases, because when the time – motion

12   time comes, that's when it probably would matter to me.

13          MR. FIDDLER:  Okay.

14          MR. DUFFY:  Yes, Your Honor.

15          THE COURT:  And discovery, if there are subpoenas,

16   third party subpoenas, that's a common issue – you know, for

17   instance, I wouldn't have jurisdiction over New York

18   subpoenas, so but they wouldn't have jurisdiction over –

19   regarding that.

20          MR. FIDDLER:  Right.

21          MR. DUFFY:  Understood, Your Honor.

22          MR. FIDDLER:  And, Your Honor, we haven't agreed to

23   do the single deposition thing, yet, but my experience has

24   been whenever we've had – I've had overlapping cases in the

25   past and the people generally do what's economical and

1  efficient.

2          THE COURT:  Right.

3          MR. FIDDLER:  And if you get everything you want in

4  one deposition, there's no need to take another one.

5          THE COURT:  Right.  I think you should have some sort

6  of an agreement.  Hopefully, it's not complicated.  And you

7  should write it down.  Okay?

8          MS. GRANT:  And for purposes of the Protective Order,

9  we do have provisions in the other two cases and the one that

10 I've sent for this case that says they can be used in the

11 public matters.

12         THE COURT:  The documents are protected –

13         MS. GRANT:  Right.

14         THE COURT:  -- but not –

15         MS. GRANT:  Yes, documents that are complex.

16         THE COURT:  From third parties but can be used –

17         MR. FIDDLER:  Right.

18         MS. GRANT:  Exactly.

19         THE COURT:  All of it.

20         MR. FIDDLER:  Within the three cases, right?

21         MS. GRANT:  Yes.

22         THE COURT:  Okay.  That all sounds good.

23              I will give you a schedule now.  Thank you for

24 the update and the detail.  I agree with that.

25              So, I'm going to write "Initial Disclosures" –

1  and you have a continuing obligation to supplement, but I will

2  say they're due November 4th.

3  No, I'm sorry, not November 4th – October 31, if

4  that's an extra week.

5  Does that work for you?

6  MR. FIDDLER:  Yes, Your Honor.

7  THE COURT:  All right.

8  Is this a jury?  Yes.

9  MR. FIDDLER:  Yes.

10  THE COURT:  And length of trial?

11  MR. FIDDLER:  Three to four days.

12  THE COURT:  Yeah.

13  MR. FIDDLER:  I think that's what we agreed upon.

14  MS. GRANT:  Yes.

15  THE COURT:  Okay.

16  New Parties and Amendments to Pleadings – let's

17  have our own devices in light of what you've said.  How about

18  we say January 6th?

19  MR. FIDDLER:  Yes, Your Honor.

20  THE COURT:  2020.  Amendments to Pleadings same date.

21  That means if somebody is going to add a new party just hold

22  off and add them in the amended pleading and then serve them.

23  If somebody is unhappy with the amended pleading, you can move

24  to dismiss, but you do not need to file motions for leave to

25  amend or any of that.  I'm giving you a break here.

1          Expert witnesses for Plaintiff – now, it says

2  that there are counterclaims in the other cases.  And so, I

3  would rather say experts for party with the burden of proof,

4  and that way we don't have any – I don't know what experts

5  you're going to have –

6          MR. FIDDLER:  Yes.

7          THE COURT:  -- but – so, I'm editing this.

8              It just says, Party with BOP.

9              And I think we've agreed to April 15th, tax day.

10             And then, Experts for Party Without the Burden

11 of Proof, is May 15.

12             And then, Rebuttal Opinions from Existing

13 Experts.  If you want to ask each other, formally or

14 informally, you know, what kind of experts you are going to

15 use, inform – sort of like a contention interrogatory, I will

16 permit that.  I don't want the defense sandbagging the

17 Plaintiff or vice versa on the defenses.  If you need an

18 expert, you should be talking, well, we are going to have this

19 kind of expert, not -- so that you both can be ready, because

20 there are no new experts at the Rebuttal Opinion time.

21             That deadline is June 15, 2020.

22             Now, the – the parties have the opportunity, if

23 they choose, to dispense with the opinion – the Rebuttal

24 Opinion deadline and use depositions instead. I'm not sure

25 when you're going to do depositions in light of reports and

1    things, but if it turns out you wait on the depos until after

2    the reports, the depos can constitute the Rebuttal Opinions.

3    The reports don't come into evidence anyway.  They're really

4    for *Daubert* purposes.

5              MR. FIDDLER:  Yes.

6              THE COURT:  And notice purposes, of course.

7                   And the point is, if you wanted to dispense with

8    Rebuttal Opinions, then you need to have some formal agreement

9    in writing.  When I say "formal" – or written agreement.  It

10   doesn't – it can be in an e-mail.  You have to – everybody has

11   to understand what's getting disclosed when and what will be

12   the limits of the opinions that can be used.  And Rebuttal

13   Opinions means opinions that truly address why the opponent's

14   experts' opinions are baloney or you disagree with them, not

15   new initial theories or the like.

16                   Anyway, then we have discovery – that's

17   discovery will close August 15th – it's a – that's a Saturday.

18   So, we will say, August 14th, 2020.  And that mediation – I'm

19   skipping –

20                   Dispositive motions would be due – this sounds

21   pretty fact intensive.  I'm asking you how likely motions will

22   be.  You're not bound.  You can file them even if you tell me

23   they're not likely, but I'm trying to figure out how much time

24   to put in this Schedule.

25              MS. GRANT:  Your Honor, we feel that we're more than

1   likely would file a dispositive motion and on the grounds

2   we've laid out.  They issued the protected activity.

3           THE COURT:  Yeah.  The business forward-looking, no

4   protection.  This –

5           MS. GRANT:  Yes.

6           THE COURT:  Okay.  That's fine.

7           MS. GRANT:  Along with some of the other grounds.

8           THE COURT:  All right.

9           So, I'll say September 16, 2020 is the motion

10  deadline.  That does include *Daubert* motions and

11  non dispositive motions but not little Motions in Limine.  I

12  mean, if there's really a key document and you're objecting to

13  it in the context of summary judgment or the like, you need to

14  make that objection in the context there of summary judgment

15  or by separate motion.  So, it's – if it's key.  If it's just

16  little documents or part of a document or something, then just

17  we'll save it for limine time.

18          If you have just in general objections to

19  evidence the opponent is trying to use in a summary judgment

20  context, you can make those objections.  Just make objections,

21  and you argue about that within the context of the summary

22  judgment briefing, because it has to be admissible evidence at

23  that point.

24          All right.  So, *Daubert* and major evidentiary

25  motions are due at the same time or in the context of the

1    summary judgment motions, that's September 16, 2020.

2                 And then, Joint Pretrial Order – the Joint

3    Pretrial Order will be due November 30th, 2020.

4                 Docket call will be December 9, 2020, at 2:30.

5    You – December 9th.  You could go to trial that next week, if

6    we can get it tried within a week.  I'm not going to try it

7    Christmas week, I don't think, although it looks that – this –

8    it turns out Christmas is on a Friday, so.

9                 Now, mediation.  You are going to have to

10   mediate.  So, I don't care too much about when, but I do care

11   that you have a mediation when you have enough confirmation to

12   understand some risks.

13                What are you thinking?

14        MR. FIDDLER:  I think later rather than earlier,

15   because we did mediate in May; it was – I think May – it was

16   not yet successful.

17        THE COURT:  Okay.  So, you've tried a little bit.

18                Okay.  Fair enough.

19                How much is in issue?  What do they claim?

20        MR. FIDDLER:  Well, Mr. Blackwell is out hard

21   economic damages three and a half million dollars and

22   Mr. Short four and a half million dollars, including stock

23   options and that kind of thing.

24        THE COURT:  So, is the company – how is the company

25   doing economically?  They're not in stress, I take it.

1        MS. GRANT:  Not that I'm aware of, Your Honor.

2        THE COURT:  Okay.

3            They're paying their bills, I guess.

4        MR. FIDDLER:  That's true, Your Honor.

5            The stock's not doing well; I know that, but –

6        THE COURT:  Yeah, my kid worked at Uber.  Uber's not

7    doing well either.

8        MS. GRANT:  I believe a large portion of that amount

9    would be the value of stock options.

10        THE COURT:  Yeah.

11        MS. GRANT:  When we go to the actual –

12        THE COURT:  Salary?

13        MS. GRANT:  The salary it's, I believe it's three and

14    four hundred thousand.

15        MR. FIDDLER:  Updatable.

16        MS. GRANT:  With the severance benefit.

17        THE COURT:  I mean, they lost their stock options, I

18    take it.

19        MR. FIDDLER:  They did, but they also had bonuses

20    that we're arguing about, as well they are three and four

21    hundred thousand dollars apiece.

22        MR. DUFFY:  Right.

23        THE COURT:  Okay.

24            So – yeah, I get you.

25            Where are they now?  Are they working again?

```
 1              MR. FIDDLER:  They are, Your Honor.
 2              THE COURT:  At salaries that are comparable or
 3   higher?
 4              MR. FIDDLER:  Less, I believe.  But I have to figure
 5   out –
 6              THE COURT:  You have to check.
 7                 Well, I can do – I can put it for the – between
 8   close to discovery and the motion time, or I can just put a
 9   docket call, and that gives you maximum flexibility.  I'm just
10   telling you you cannot come to docket call – you certainly
11   cannot get a trial, doc- -- even docket call without having
12   tried to mediate, but I don't mind if you wait until after the
13   motions are decided or something like that.  But I don't want
14   you to spend you last dollar over these dollar ranges.  I'm
15   going to leave it up to you.  All right?
16              MR. FIDDLER:  Thank you, Your Honor.
17              THE COURT:  So, docket call everybody agrees?
18              MR. FIDDLER:  Yes, Your Honor.
19              MS. GRANT:  Yes, Your Honor.
20              THE COURT:  It'll float.
21                 Now, these are real deadlines.  The deadlines
22   can move if you agree or if you ask before the deadline
23   expires and you have a decent reason.  If you wait until after
24   the deadline expires, then it gets harder, and you have to ask
25   for conference and I talk to you about it.
```

1                  But here's your Schedule.  If you will review

2   it, sign it and then hand it back, we'll get it docketed.

3                  MR. FIDDLER:  Your Honor, I think there were two

4   things that maybe were not addressed in here, but maybe

5   Ms. Grant knows, but as far as being able to e-mail pleadings,

6   discovery to opposing counsel under the Federal Rules, I guess

7   we can agree to do that as service?

8                  THE COURT:  Yes, service is – e-mail is acceptable as

9   service?

10                  MS. GRANT:  Yes, Your Honor.

11                  THE COURT:  Okay.  Good.

12                  MR. FIDDLER:  Then, we also have employment law

13   protocols that we've agreed to.

14                  THE COURT:  Oh.

15                  MR. FIDDLER:  But I don't know that we put a date on

16   it.

17                  THE COURT:  Right.  Well, oh, I forgot all about

18   those in this context.  My mistake.

19                  I do usually use those protocols, but I don't

20   issue an order requiring it, because I want to meet with the

21   parties.

22                  Those protocols are what structure and really

23   address my concern about the ful - -- fulsomeness of the

24   Initial Disclosures, so –

25                  MR. FIDDLER:  We've agreed to them.  I guess the

1  issue would just be the –

2          THE COURT:  Well, the question is –

3          MR. FIDDLER: -- way.

4          THE COURT:  -- can you do them – I'm looking at them

5  now.  Can you do them at the time of the Initial Discov- --

6  Initial Disclosure, or do you think it needs to be at a

7  different time?

8          MR. FIDDLER:  I think we can, because I think we've

9  already answered Interrogatories in the other case.  The

10  discovery –

11          MS. GRANT:  Yes, yes.  Given the discovery and it's

12  our – I guess my assumption that that was the Initial

13  Disclosures that would be due on the 31st.

14          MR. FIDDLER:  Right, right.

15          THE COURT:  Okay.  So, the Initial – I mean, the

16  employment protocols are in effect.  We'll put that as an

17  order in the minutes, so that you should respond to those as

18  part of your Initial Disclosures.

19              And if for some reason there is an omission

20  adapt, make all of the other Disclosures and then have a

21  supplemental disclosure with anything that was not available

22  by the 31st.

23          MR. FIDDLER:  Okay.

24          THE COURT:  Okay?

25          MR. FIDDLER:  Thank you, Your Honor.

1          MS. GRANT:  Thank you.

2          THE COURT:  Thank you.  You're excused.

3          MR. FIDDLER:  Thank you, Your Honor.

4      (Proceedings concluded at 1:32 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF TEXAS

3                     HOUSTON DIVISION

4

5       I, Linda Griffin, court approved transcriber, certify that

6    the foregoing is a correct transcript from the official

7    electronic sound recording of the proceedings in the above-

8    entitled matter.

9

10   /s/ Linda Griffin                    October 29, 2019
     Linda Griffin                              Date
11   Digital Scroll Transcription

12

13

14

15

16

17

18

19

20

21

22

23

24

25